Johnson, J.
There is no doubt as to the rule, that if a party’s declarations, or admissions, are given in evidence against him, the whole that was said at the time, in relation to the same subject, must be taken together ; for otherwise it would be impossible to ascertain their true import: and there is as little doubt about the universality of the rule. Let us apply it here. The witnesses profess to state all that they heard pass between the prisoner and the slave, Dick. They do say, it is true, that they heard them in further conversation, but so indistinctly as not to comprehend what was said. It does not then appear, that this further conversation had any relation to the subject matter ; and the prisoner has had the full benefit of the rule. That which is heard may be given in evidence, but that which is not heard cannot from necessity.
The finding of the jury has established the fact, and I think it the necessary conclusion from the evidence, that the prisoner and the negro set out, and went the distance of twenty-five or thirty yards, in the prosecution of an intention, on the part of the prisoner, to inveigle the negro from the service, and employment of the master; but were prevented from proceeding further by the persons laying in wait. If these circumstances are divested of the assent of the owner, through his family, in his absence, the effect of which I shall hereafter consider, they constitute clearly the fact of inveigling, within the meaning of the act, by which the owner was “ deprived of the use and benefit” of the slave, and was a consummation of the felony.
The act declares it a felony in any one “ who shall inveigle, steal, or carry away, any negro or other slave or .slaves,” &c. “ so as the owner or employer of such slave or slaves shall be deprived of the use and benefit of such slave,” &c. P. L. 236. Here, it will be observed, are two distinct offences, inveigling, and stealing, differing, it is true, in the manner of perpetration; the one consisting of a moral, or rather immoral, influence over the mind of the slave, and thus subjecting his person to control, the other of physical force, by which his person is brought into subjection. But in their consequences to thé owner, the loss of *571 service, they are identical; and the same circumstances, which would constitute evidence of the loss of service in the one case, will also constitute it in the other;
In Miles’ case, 2 N. & M. 4, Judge Nott remarks, that “ whenever one man disposes of the property of another, against his will, and when he has a right to its services, the law implies a loss of service and I am ignorant of any rule, or law, which prescribes any given period of time. If it is but for one moment, the loss is as perfect as at any other indefinite period. Such was the rule laid down in the case of Lapier, 2 East’s P. C. 557, who was indicted for robbing Mrs. Hobart, and taking from her person a diamond ear-ring. He had caught at her ear-ring when she was coming out of the opera house, and tore it out of her ear, but it fell into her hair, where it was afterwards found ; and the Judges were all of opinion that this constituted a robbery. Its being in the possession of the prisoner, for a moment, separate from the person of the lady, was sufficient, although he could not retain it.. Indeed all the cases proceed on the same principle.
The counsel for the defendant have relied much upon Cherry’s case, 2 East’s P. C. 556, where, on an indictment for stealing a wrapper and some liuen, it appeared, that the linen was packed up in the wrapper, arid laid lengthwise in a wagon ; and the prisoner, for the greater convenience of taking away the linen, set up the package on end, and cut off the wrapper, but was detected before he had taken any thing away; and it was held not to be larceny. But I cannot perceive the analogy between this and that case. Here, the prisoner had gone twenty-five or thirty yards with the negro. There, although the position of the goods was changed, they had not been removed from the place in which they were deposited by the owner ; and that was the ground on which the judgment proceeded.
I come now to the consideration of, I think, the most important question which arises out of the grounds of this motion. The owner, or rather his family in his absence, which I regard as equivalent, knew of, and had assented to the negro’s meeting the prisoner, and arranging with him their plan of elopement, and moving forward in the execution of it; and the question is, whether, the owner, under these circumstances, can be said to be “ deprived of the use and benefit” of his slave, within the meaning of the act.
*572 In considering this question, it will be necessary to recur again to the analogy between the crimes of inveigling, and stealing, a slave, in relation to the effect on the owner, the loss of use and benefit, for the purpose of applying the rules of law. In larceny, the primary inquiry is, whether the taking were invito domino, or without the will or approbation of the owner; 2 East’s P. C. 665. and so of inveigling a slave. If, therefore, one consent that another shall take his goods, or by his own act procure them to be taken, such taking is not larceny. But I apprehend, that the knowledge that they are to be taken, does not constitute evidence of such consent or approbation. Thus, if one, who has goods exposed, knows that a thief intends to take them, but neglect to watch or secure them, this neglect is in some sort an assent to the taking by the thief; but the act is not in pursuance of the will, or approbation of the owner, but the voluntary act of the thief. A few oases will serve to illustrate the principle.
In McDaniel’s case, 2 East’s P. C. 665, one Salmon had conspired with McDaniel, and other persons, to procure himself to be robbed by two others, who were ignorant of the design, for the purpose of procuring the reward given by act of Parliament for apprehending robbers on the high way ;• and it was held, that the robbery,under such circumstances, did not constitute felony. The obvious reason is, that the act was procured to be done by the party complaining, and in pursuance of his will and approbation.
But in Norden’s case, 2 East’s P. C. 666, where one knowing that a highway robber frequented a particular place, put himself in his way, and upon being attacked by the highway-man gave him his money, and afterwards seized him, it was held to be robbery in the highway-man ; for the act was not. procured by the prosecutor, nor done according to his will, but proceeded from the voluntary act of the prisoner.
Eggington’s case, 2 East’s P. C. 666, bears even a more striking analogy to the present. There, the prisoner and some others, intending to rob one Boulton’s manufactory at Soho, had applied to one Phillips, his servant, who was employed there, as a watchman, to assist in the robbery, and Phillips assented, but soon after gave information to Boulton, who assented to his carrying on the business, and to his leaving open the door leading to the front yard, and to his being with the prisoners the *573 whole time. One hundred and fifty guineas, and some silver ingots, marked for the purposes of identity, were left in the counting house ; and a majority of the Court were of opinion, that the taking, under these circumstances, was larceny. Lawrence, J. doubted ; but the reasoning of the Court is, to my mind, perfectly satisfactory. They thought there was no assent on the part of Boulton. That his object being to detect the prisoners, he only gave them a greater facility to commit the larceny,than they otherwise might have had ; and that this could no more have been considered as his assent, than if a man, knowing of the intent of thieves to break into his house, were not to secure it with an unusual number of bolts. The design having originated with the prisoners, it could only be considered as an apparent assent on the part of Boulton.
Vide 2 N. & M. 27.
Of the same character, and alike analogous, is the case of Stroud, reported in a note in 2 Brev. Dig. 249, upon the authority of which very many cases have since been adjudged. That was a prosecution founded on the act of the Legislature imposing a penalty on any one who should deal or traffic with a slave, without a written ticket or permit from the owner; and it was held, that the offence was consummated, although the trading was done by the slave in pursuance of the instructions of the owner, and in his presence, when the accused was ignorant of such instructions and presence. This, like Eggington’s case, being a contrivance to detect the offender.
The principle inculcated in these cases, appears to me to have a direct application to the case in hand. Every act of the prisoner proceeded from his own mere motion, without any agency on the part of the owner of the slave. His not preventing the thing, when he knew of it before hand, is not evidence of the assent of his will, but is only an apparent assent. The act was therefore invito domino, and constituted felony.
O’Neall, J. concurred.
Motion refused.